

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| DMB:RMT | *271 Cadman Plaza East* |
| F.#2009R01959 | *Brooklyn, New York 11201* |

March 7, 2012

**BY ECF and Hand Delivery**

The Honorable I. Leo Glasser
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:  United States v. Sedgewick Smalls
             Criminal Docket No. 09-728 (ILG)

Dear Judge Glasser:

       The government respectfully submits this letter in advance of the upcoming guilty plea and sentencing in the above-referenced violation of probation proceedings, which are scheduled for March 12, 2012.  For the reasons set forth below, the government respectfully requests that the Court impose a term of imprisonment at the high end of the 30-to-37-month Guidelines range that was in effect at the time of the defendant's original sentencing on June 8, 2011.

I.    Background

    A.   The Original Case

       On August 21, 2009, New York City Police Department ("NYPD") officers observed the defendant standing near the corner of Nostrand Avenue and Foster Avenue in Brooklyn.  The defendant was drinking out of a tall can wrapped in a paper bag. Recognizing the size and shape of the can to be consistent with a can of beer, the officers pulled their vehicle up to the curb in front of the McDonald's.  As they did so, the defendant quickly turned and went inside the McDonald's.  The officers then exited their vehicle and followed the defendant inside.  Once inside the McDonald's, the officers approached the defendant and observed that he had his hand in a garbage receptacle near the entrance and was apparently attempting to pour the contents of the can into the garbage.  One of the officers placed his hand on the defendant's shoulder, at which time the defendant stated, "I have a gun!" and "I am not going to resist!"  The officer immediately

placed his hand on the front of the defendant's waistband, where
he felt and removed a Dan Wesson .44 caliber revolver.  That
revolver, which was not loaded, measures 12 inches in overall
length.  The defendant was placed under arrest.

Later that night, the defendant was advised of and
waived his <u>Miranda</u> rights.  During the interview that followed,
the defendant stated that he has a daughter and that she was
seeing a young man of whom the defendant did not approve.  The
defendant stated that he had previously attempted to speak with
the young man's father and that their discussion had escalated
into a verbal dispute.  Following that dispute, the defendant
decided to return home to pick up a .44 magnum revolver that was
stored at his residence.  After picking up the revolver, the
defendant intended to return to the young man's house and use the
revolver to threaten the young man's father.  The defendant
stated that on his way back to the young man's house he stopped
and purchased a beer, which he was drinking when stopped by
police.  The defendant also confirmed that he had told officers
that he had the revolver in the waistband of his pants.

On June 8, 2011, the Court sentenced the defendant to a
three-year term of probation.  As the Court imposed sentence, the
following discussion occurred (Sentencing Tr. 9-12):

> THE COURT: I don't know what it is that got
> you involved in a robbery about three or four
> years ago, why that happened.
>
> THE DEFENDANT: I was intoxicated and hanging
> with the wrong person who influenced me.
>
> THE COURT: One of the important things you
> have to learn in life, and I'm sure you have
> by now, is to pick your friends carefully.
> Keep away from people who are going to get
> you in trouble.  That is the key.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: The history and characteristics of
> the defendant I think we have reviewed.  The
> nature and circumstances of the offense we
> have reviewed.  Mr. Smalls was drinking out
> of a paper bag, a can of beer as I remember
> it, when some police officers justified that
> they saw what was in that bag and what was
> the writing on the can.  I remember it quite

well, just as I remember Mr. Smalls.  If
there's anything that Section 3582 of Title
18, any case that it must have in mind is
this one or this equivalent.  Namely, that
imprisonment is not to be the panacea for
rehabilitation.  Why the government would ask
for a sentence of imprisonment in this case
is startling, in all due respect.

I understand the government's position that
you have to prosecute the most serious
crimes.  This is completely misguided in this
case, in my view.  It is obvious that Mr.
Smalls has turned his life around and has
taken care of his family.  He has given them
a decent life and an honest life, and he has
for sometime.

I am putting Mr. Smalls on probation for a
period of three years.  There is a $100
special assessment.

. . .

There isn't very much for me to say to you.
What I've been reading about the way that
you've been conducting your life for the past
two years, I would hope, would have you see
that that's the way one should conduct
oneself and not go home every night and worry
about whether a cop is going to be knocking
on your door to come to arrest you.  Do an
honest day's work and come home tired, have a
drink, enjoy your kids and your wife.  That's
the way that people should be living.

I don't know what you were doing with the gun
some years ago and how those things come
about.  Guns are bad.  That is why the
government is making such a strong argument
about it. The government is very, very
concerned about the amount of guns on the
streets.  I see it everyday.  I see it with
young kids who are involved with the wrong
people, carrying guns, selling crack. There
are kids 19 and 20 years old going to prison
for five years, a mandatory minimum.  That is
tragic.  Keep away from it.  I don't think

4

there is anything else for me to say except I
wish you good luck and I hope that you
continue on the path that you are on.

THE DEFENDANT: Thank you.

THE COURT: Be a role model for your kid; the
role model that you didn't have,
unfortunately.  You had a grandmother and
grandfather -- or aunt and uncle taking care
of you and both were alcoholics and drug
addicts.

THE DEFENDANT: And they both passed away
since I have been in the program.

THE COURT: You had nobody to look up to and
serve as a role model to you.  That tells you
about the role that you should be playing for
your children.  Be a role model for them, be
somebody they will be proud of and look up to
and want to be like.  Okay?

THE DEFENDANT: Yes, sir.  Thank you.

MR. TUCKER: Thank you, Your Honor.

THE COURT: Mr. Morris, I think Mr. Smalls
waived his right to appeal?

MR. MORRIS: Yes, Judge.

THE COURT: The sentence not being in excess
of 41 months.

MR. MORRIS: Yes, Your Honor.

THE COURT: He waived his right to appeal?

MR. MORRIS: Yes, Your Honor.  Thank you,
Judge.

THE COURT: Good luck to you, Mr. Smalls.  I
don't want to see you again.

THE DEFENDANT: No problem, you won't.

5

B.      The Instant Arrest

        On September 15, 2011, at approximately 5:43 p.m., NYPD
officers observed the defendant standing near the corner of
Nostrand Avenue and Foster Avenue -- the same location where he
was arrested in August 2009 -- with an open bottle of beer.  As
officers approached him, the defendant ignored their commands to
stop and fled into a nearby store.  As the officers took the
defendant into custody, they observed a bulge in the defendant's
waistband.  Officers searched the defendant and found a Ruger
.357 magnum revolver that contained spent bullet casings.

        The defendant was subsequently released on bond.  On
October 24, 2011, he failed to appear in Kings County Supreme
Court to be arraigned on his indictment and a bench warrant was
issued for his arrest.  On November 15, 2011, the defendant was
arrested by the U.S. Marshals Service on the instant probation
violation and remanded.  On February 15, 2012, the defendant
pleaded guilty in state court to attempted criminal possession of
a weapon in the third degree, which is a Class E felony.  He has
not yet been sentenced in that case.

C.      The Defendant's Criminal History

        Prior to his arrest in August 2009, the defendant had
been arrested three times.  On October 13, 1993, he was arrested
after he and another individual were seen driving what was later
determined to be a stolen car, striking numerous vehicles and a
pedestrian before fleeing the scene.  The defendant, who was 17
at the time, received a sentence of five years' probation in
connection with that offense of criminal possession of stolen
property in the third degree.

        On January 27, 2007, the defendant was arrested for
illegal possession of a weapon in a motor vehicle.  He received a
sentence of three years' probation in connection with that
offense.

        On June 1, 2008, apparently while still on probation in
connection with his January 2007 arrest, the defendant was
arrested yet again.  He subsequently pleaded guilty to robbery in
the third degree and was sentenced to a six-month term of
imprisonment.  On that occasion, the defendant and another
individual forcibly stole another person's cellular phone, watch,
ring and wallet.  The victim reported that the defendant held him
in a headlock and pushed him to the ground, at which time the
defendant and his associate began to kick and punch the victim.
As a result of the attack, the victim lost two teeth from his
dentures and bruised his elbow.

6

II. Discussion

      Pursuant to Title 18, United States Code, Section 3565(b)(2), upon the defendant's guilty plea to Charge One, his term of probation must be revoked and the defendant must be resentenced under the statutory penalties applicable at the original sentencing.  Although the applicable Guidelines range for this violation is 8 to 14 months, the government respectfully submits that a more significant punishment is appropriate and necessary.

      As set forth above, Your Honor originally imposed a non-custodial sentence at least in part based on the defendant's representation that, thanks to his successful completion of substance abuse treatment, he no longer constituted a danger to the community or a risk of recidivism.  Indeed, at the conclusion of the sentencing, the Court admonished the defendant that Your Honor did not want to see the defendant again and the defendant responded, "No problem, you won't."

      In fact, the defendant was arrested just three months later in possession of a firearm and under the influence of alcohol.  Such behavior demonstrates that the defendant's promise to seize the second chance that Your Honor gave him to follow the law and care for his family was nothing more than an opportunistic lie.

      Under these circumstances, the government submits that the objectives of Section 3553(a) now require a substantial period of incarceration.  Certainly, such a sentence will achieve the goal of specific deterrence, but even more important, a significant custodial sentence will serve to protect the public from a man who seems bent on obtaining and carrying firearms.  Otherwise, the government fears that the defendant's next inevitable violation will involve more than simple possession of a firearm.  Indeed, the circumstances of the defendant's June 2008 arrest -- wherein he assaulted, robbed and seriously injured another individual -- show that the defendant is no stranger to violence.

7

III. <u>Conclusion</u>

      For the reasons set forth above, the government respectfully asks the Court to sentence the defendant to a term of imprisonment at the high end of the Guidelines range in effect at the time of the defendant's original sentencing of 30 to 37 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:       /s/
      Richard M. Tucker
      Assistant United States Attorney
      (718) 254-6204

cc:   Douglas Morris, Esq. (via ECF)
     Clerk of Court (ILG) (via ECF)
     Kenneth Wong, Probation Department (via Email)